**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ABIGAELLE VERTIL<br>9071 Mill Creek Rd, Apt 3002<br>Levittown, PA 19054<br><br>      Plaintiff,<br><br>      v.<br><br>LB CAPITAL, LLC.<br>f/k/a SERVICE PUPS, LLC<br>1414 Radcliffe St, Ste 115<br>Bristol, PA 19007<br>      and<br>LANCE AND SCOTT HOLDINGS, INC.<br>d/b/a Shock I.T. Support & Shock I.T.<br>721 Arbor Way, Ste 140<br>Blue Bell, PA 19422-1977<br>      and<br>LMM LFG, LLC<br>d/b/a Titan Pro Technologies<br>721 Arbor Way, Ste 140<br>Blue Bell, PA 19422-1977<br>      and<br>PLANET ROOF PA, LLC<br>d/b/a Planet Roof 1<br>721 Arbor Way, Ste 140<br>Blue Bell, PA 19422-1977<br>      and<br>LCLFG, LLC<br>d/b/a Munz Roofing and Siding, LLC<br>1414 Radcliffe St, Ste 100C<br>Bristol, PA 19007<br>      and<br>MARYLAND ROOFING, LLC<br>d/b/a Roofing Pups<br>1414 Radcliffe St, Ste 115<br>Bristol, PA 19007<br>      and<br>SALTY DOG ROOFING<br>AND SIDING, LLC<br>d/b/a Roofing Pups<br>721 Arbor Way, Ste 140<br>Blue Bell, PA 19422-1977 | CIVIL ACTION<br><br>CASE NO.: _____<br><br><br>**<u>JURY TRIAL DEMANDED</u>** |

and                                          :
JOHN DOE COMPANY                             :
d/b/a Lee's Air, Plumbing & Heating          :
721 Arbor Way, Ste 140                       :
Blue Bell, PA 19422-1977                     :
                                             :
          Defendants.                        :
_____:

## CIVIL ACTION COMPLAINT

Plaintiff, Abigaelle Vertil (hereinafter referred to as "Plaintiff" unless indicated otherwise), hereby complains as follows against the above-captioned Defendants and avers as follows:

## INTRODUCTION

1.      Plaintiff initiates the instant action to redress violations by Defendants of Title VII of the Civil Rights Act of 1964, ("Title VII" – 42 U.S.C. §§ 2000d *et. seq.*)/the Pregnancy Discrimination Act ("PDA"), the Pregnant Workers Fairness Act ("PWFA" - Pub. L. No. 117-328, 136 Stat. 4459 (2022)), and the Pennsylvania Human Relations Act ("PHRA"). As a direct consequence of Defendants' unlawful actions, Plaintiff seeks damages as set forth herein.

## JURISDICTION AND VENUE

2.      This Court, in accordance with 28 U.S.C. § 1331, has jurisdiction over Plaintiff's claims, because this civil action arises under a law of the United States.

3.      This Court may properly maintain personal jurisdiction over Defendants because Defendants' contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendants to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *International Shoe Co. v. Washington,* 326 U.S. 310 (1945) and its progeny. This Court has supplemental jurisdiction over Plaintiff's state-law claim(s) because such claim(s) arise out of the same common nucleus of operative facts as her federal claims asserted herein.

4.    Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this district because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district and Defendants are deemed to reside where they are subject to personal jurisdiction, rendering Defendants citizens of the Eastern District of Pennsylvania.

5.    Plaintiff is proceeding herein under the Title VII/PDA and the PWFA and has properly exhausted her administrative remedies by timely filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and by filing the instant lawsuit within ninety (90) days of receiving a notice of dismissal and/or right to sue letter from the EEOC.

**PARTIES**

6.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

7.    Plaintiff is an adult individual, with an address as set forth in the caption.

8.    Defendants LB Capital, LLC ("Defendant LB") is a private equity firm located at 1414 Radcliffe Street, Suite 115, Bristol, PA 19007 (registered with Pennsylvania's Secretary of State's website at 721 Arbor Way, Ste 140, Blue Bell, PA 19422).

9.    Defendant LB is a business that specializes in investing in, partnering with, and operating various home service and technology companies in order to optimize the profitability of said businesses for the purposes of selling them for financial gain.

10.    Upon information and belief, Defendant LB previously operated under the name Service Pups, LLC, ("Defendant SP"), which was registered at the same address at which Defendant LB currently operates.

11.    Defendant LB employs over 15 or more employees by itself and/or in conjunction with the various entities in its portfolio, including the above-named Defendants:

i.   Lance and Scott Holdings, Inc. d/b/a Shock I.T. Support & Shock I.T.

ii.  LMM LFG, LLC d/b/a Titan Pro Technologies

iii. Planet Roof PA, LLC d/b/a Planet Roof 1 and Planet Roof;

iv.  LCLFG, LLC  d/b/a Munz Roofing and Siding, LLC;

v.   Maryland Roofing, LLC d/b/a Roofing Pups;

vi.  Salty Dog Roofing and Siding, LLC d/b/a Roofing Pups; and

vii. John Doe Company d/b/a Lee's Air, Plumbing & Heating.[1]

12.    While employed with Defendant LB, Plaintiff performed as a Human Resources Generalist for all the above-named companies, including but not limited to, sending offer letters to employees, onboarding employees, creating handbooks, and handling other employee personnel matters.

13.    Upon information and belief each of the aforesaid Defendants operate out of Defendant LB's Bristol, PA location or Blue Bell, PA location (as identified in the above-captioned address).

14.    Based on the foregoing and upon information and belief, Defendant LB and its aforesaid named subsidiaries, partnerships, and/or affiliated entities overlapped in management and operations during Plaintiff's employment. Because of their interrelation of operations, common ownership or management, centralized control of labor relations, common financial controls, and other factors, all Defendants were sufficiently interrelated and integrated in their

---

[1] Plaintiff performed work for this entity as a Human Resources Generalist during her respective employment with Defendant LB. After performing her due diligence, Plaintiff is unable to determine the actual corporate designation of this entity and is only aware of the company's fictious name. After engaging in discovery regarding this particular entity, Plaintiff intends to amend the instant Civil Action Complaint to include the correct corporate designation(s) of this joint employer.

4

activities, labor relations, ownership and management that they may be treated as a single, joint and/or integrated employer for purposes of the instant action.

15. At all times relevant herein, Defendants acted by and through their agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendants.

## FACTUAL BACKGROUND

16. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

17. Plaintiff was hired by Defendants on or about November 25, 2024.

18. Throughout Plaintiff's employment with Defendants, she worked as a Human Resources ("HR") Generalist.

19. She performed HR duties for every Defendant as if she were employed by each individual entity.

20. Plaintiff's job duties while employed with Defendants included setting up interviews with job candidates, writing offer letters, and distributing them to new candidates, assisting with the creation of handbooks for each entity, and handling other employee personnel matters and HR duties.

21. At all times relevant herein, Plaintiff was supervised by Defendants' Human Resources Director Head of Talent Recruitment, Kerry Pettit ("Pettit").

22. Pettit held this position for all Defendants and had total control over hiring and firing decisions throughout each entity.

23.     Pettit acted with impunity in her role and frequently used aggressive and unprofessional language towards other employees and leadership in the course of Defendants' operations.

24.     Even Defendants' CEO, Bill Rossell ("Rossell"), allowed her to raise her voice and use coarse language towards him without any consequences.

25.     At Plaintiff's initial job interview, Rossell even stated: "I am going to protect her [Pettit] at all costs, and I want those that are around her to feel that way of protecting her just as much."

26.     Plaintiff was unlawfully terminated from her employment with Defendants on or about December 18, 2024, for reasons discussed *infra*.

27.     During her employment with Defendants, Plaintiff was a hard-working employee, who was not subjected to a history of progressive discipline.

28.     However, her work environment was tainted by the discriminatory and retaliatory treatment she began being subjected to after apprising Defendants' management, including Pettit, of her pregnancy.

29.     Plaintiff apprised Defendants' management, specifically Pettit, of her pregnancy on or about December 5, 2024, in the context of letting management know about her upcoming pregnancy-related appointments and keeping management informed of the status of her health.

30.     Plaintiff further shared that due to her pregnancy, she would require dental appointments because of dental complications associated with her pregnancy (specifically, because more cleanings are required due to hormones released during pregnancy that cause a woman's gums to be inflamed/infected more easily than when not pregnant).

31. Plaintiff's aforesaid disclosures led to significant further dialogue about her pregnancy, and eventually it was disclosed that she was a surrogate pregnancy.

32. Upon learning that Plaintiff was a surrogate, Pettit had asked her many questions about surrogacy in general and the process.

33. Shortly after informing Defendants' management about her pregnancy and the necessity of certain pregnancy-related medical appointments, Plaintiff noticed that Pettit was much less friendly and kept communications briefer than before.

34. Pettit also began to push Plaintiff physically following her aforesaid pregnancy disclosures by assigning her work in Defendants' storage room, moving boxes with apparel, and other physical tasks (not requested of her prior).

35. Doing such physical work was making Plaintiff experience more significant back pain (than just the general back pain a woman may experience when pregnant), and she would even tell Pettit that the physical work was tough on her back and that she needed an occasional break.

36. Plaintiff only missed coming into the office three days in total during her tenure with Defendants on November 26, 2024 and December 12 and 13, 2024.

37. On or about November 26, 2024, Plaintiff requested leave to attend a dental appointment, was approved by Pettit to attend this appointment the same day, attended the appointment, and then returned to the Radcliffe Street location to finish the workday, missing only 2 hours of work time.

38. On or about December 12 and 13, Plaintiff's son fell ill with an ear infection.

39. Plaintiff's aforesaid absences were authorized by Pettit herself so that Plaintiff could care for her son while he had the severe ear infection.

7

40.     Plaintiff offered to share the responsibility of caring for her son with her son's father, so that she would not have to miss a full day of work, but Pettit insisted that "Taking care of him is more important, stay home with him today."

41.     However, despite insisting that Plaintiff stay home to take care of her son and authorizing her two-day absence via text, Pettit required that Plaintiff produce medical information about her son and to verify that she actually took off from work for his health.

42.     On or about December 15, 2024, Plaintiff communicated (via email) with Pettit and shared that she had to rush back to her child's pediatrician to get a summary of notes because of Pettit's demand, but that in the future she would only be providing a doctor's note.

43.     Plaintiff had further expressed concern that Petitt was making her uncomfortable, that she did not know why Petitt would distrust her, and that Petitt's inquiry into her son's medical information seemed improper because no employment policies required such medical documentation and it is atypical in HR processes for a 1 or 2-day absence.

44.     In Plaintiff's December 15, 2024 email, she also outlined two (2) upcoming medical appointments for pregnancy (wherein she would need some time off from work).

45.     On or about December 16, 2024, Pettit responded that they would have a conversation about these concerns on December 17, 2024, once Plaintiff arrived for work that day.

46.     At the December 17, 2024 meeting between Plaintiff and Pettit, Pettit only spoke very briefly about Plaintiff's son's medical documentation, and quickly changed the subject to Plaintiff's pregnancy and surrogacy.

47.     The discussion about pregnancy and surrogacy completely eclipsed the ostensible purpose of the meeting. For example, Pettit asked multiple questions about Plaintiff's pregnancy, including:

8

    i.  Whether Plaintiff would have more than the two (2) upcoming appointments she outlined in her prior email;

    ii.  How many hours out of a day each appointment would take, and whether any appointment would require a whole day's absence (none of them would have caused Plaintiff to be completely absent); and

    iii.  How often Plaintiff expected to be out for pregnancy-related appointments in the upcoming weeks and months.

48.    After concluding her questioning about Plaintiff's pregnancy and need for intermittent time off related to the same, Pettit told Plaintiff that being late or absent "does not look good," regardless of whether the lateness or absence has to do with her pregnancy.

49.    Pettit also stated that if Plaintiff is not present, leaders would ask Pettit "where is your assistant," and that Defendants are so busy that timeliness and attendance are critical to the company's success.

50.    In response, Plaintiff assured Pettit that any appointments would not cause her to miss a whole day, but rather only a short time in a morning or afternoon.

51.    Throughout the December 17, 2024 meeting, Pettit maintained a questioning tone.

52.    On December 18, 2024, the day after Plaintiff and Pettit's conversation about Plaintiff's future pregnancy needs, Defendants terminated Plaintiff's employment without any explanation as to the reason, other than Plaintiff's employment was "at-will employment."

53.    Plaintiff believes and therefore avers that her termination was a discriminatory and retaliatory adverse action, and that Defendants' stated reason of "at-will employment" was entirely pretextual, because (and by way of example only) the action was taken in close temporal proximity

to (1) Plaintiff's pregnancy announcement (approximately 13 days later); (2) Plaintiff's request for reasonable accommodations; and (3) Pettit's aggressive questioning of her pregnancy (1 day later).

54.   Furthermore, Pettit did not treat Plaintiff with the aforesaid suspicion and curtness until after she announced her pregnancy and notified Pettit of the intermittent time she would need of in the near future for her pregnancy.

55.   Based on the foregoing, Plaintiff believes and therefore avers that she was terminated from her employment with Defendants in violation of federal law.

### First Cause of Action
### Violations of Title VII/PDA
### ([1] Pregnancy Discrimination; [2] Retaliation; [3] Hostile Work Environment)
### -Against All Defendants-

56.   The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

57.   Plaintiff is qualified under the Title VII/PDA for protection because she was pregnant.

58.   Plaintiff was subjected to a hostile work environment through disparate treatment, discriminatory comments, suspicion and distrust, and overall negative treatment because of her pregnancy.

59.   Based on the foregoing, Plaintiff's pregnancy was a motivating or determinative factor in Defendants' decision to terminate her employment.

60.   Defendants' actions of subjecting Plaintiff to a hostile work environment and terminating Plaintiff constitute violations of Title VII/PDA.

**Second Cause of Action**
**Violations of the PWFA**
**([1] Interference; [2] Retaliation; [3] Hostile Work Environment)**
**-Against All Defendants-**

61.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

62.     Plaintiff is qualified under the PWFA for protection because she was pregnant during her employment with Defendants and had requested a reasonable accommodation in the form of intermittent time off.

63.     Plaintiff was subjected to retaliatory treatment after inquiring about pregnancy-related accommodations and informing Defendants' management that she intended to utilize reasonable pregnancy-related accommodations.

64.     Plaintiff was terminated shortly after notifying Defendants' management that she would need two days off in the near future for pregnancy-related reasons.

65.     Plaintiff believes and therefore avers that her rights under the PWFA were interfered with, and she was retaliated against for requesting reasonable pregnancy-related accommodations when she was subjected to a hostile work environment and unlawfully terminated.

66.     Defendants' actions as aforesaid constitute violations of the PWFA.

**Third Cause of Action**
**Violations of the PHRA**
**(Pregnancy Discrimination – Wrongful Termination & Hostile Work Environment)**
**-Against All Defendants-**

67.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

11

68.     Plaintiff was subjected to a hostile work environment through disparate treatment, discriminatory comments, suspicion and distrust, and overall negative treatment because of her pregnancy.

69.     Plaintiff's pregnancy was a motivating or determinative factor in Defendants' decision to terminate her employment.

70.     Defendants' actions of subjecting Plaintiff to a hostile work environment and unlawfully terminating Plaintiff constitute violations of the PHRA.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A.     Defendants are to be prohibited from continuing to maintain their illegal policy, practice or custom of discriminating/retaliating against employees and are to be ordered to promulgate an effective policy against such unlawful acts and to adhere thereto;

B.     Defendants are to compensate Plaintiff, reimburse Plaintiff and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendants' illegal actions, including but not limited to past lost earnings, future lost earnings, salary, pay increases, bonuses, medical and other benefits, training, promotions, pension, and seniority. Plaintiff should be accorded those benefits illegally withheld from the date she first suffered retaliation/discrimination at the hands of Defendants until the date of verdict;

C.     Plaintiff is to be awarded punitive damages, as permitted by applicable law(s) asserted herein, in an amount believed by the Court or trier of fact to be appropriate to punish Defendants for their willful, deliberate, malicious and outrageous conduct and to deter Defendants or other employers from engaging in such misconduct in the future;

D.     Plaintiff is to be accorded any and all other equitable and legal relief as the Court deems just, proper and appropriate including for emotional distress;

12

E.      Plaintiff is to be awarded the costs and expenses of this action and reasonable legal fees as provided by applicable federal and state law;

F.      Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages set forth in applicable federal law; and

G.      Plaintiff's claims are to receive a trial by jury to the extent allowed by applicable law. Plaintiff has also endorsed this demand on the caption of this Complaint in accordance with Federal Rule of Civil Procedure 38(b).

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By:      _____
Ari R. Karpf, Esq. (91538)
8 Interplex Drive, Suite 210
Feasterville-Trevose, PA 19053
215-639-0801 (P)
215-639-4970 (F)
akarpf@karpf-law.com

Dated: April 29, 2026

13

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

| | | |
|---|---|---|
| ABIGAELLE VERTIL | : | CIVIL ACTION |
| v. | : | |
| LB CAPITAL, LLC. f/k/a SERVICE PUPS, LLC, et al. | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255. ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits. ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2. ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos. ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.) ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks. (x )

| | | |
|---|---|---|
| 4/29/2026 | | Plaintiff |
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-639-0801 | 215-639-4970 | akarpf@karpf-law.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

**(Civ. 660) 10/02**

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**

Place of Accident, Incident, or Transaction: <u>Defendants place of business</u>

---

***RELATED CASE IF ANY:*** Case Number:_____ Judge:_____

1.  Does this case involve property included in an earlier numbered suit?                                Yes ☐

2.  Does this case involve a transaction or occurrence which was the subject of an earlier numbered suit?   Yes ☐

3.  Does this case involve the validity or infringement of a patent which was the subject of an earlier numbered suit?   Yes ☐

4.  Is this case a second or successive habeas corpus petition, social security appeal, or pro se case filed by the same individual?   Yes ☐

5.  Is this case related to an earlier numbered suit even though none of the above categories apply?   Yes ☐
    If yes, attach an explanation.

I certify that, to the best of my knowledge and belief, the within case ☐ **is** / ☒ **is not** related to any pending or previously terminated action in this court.

---

**Civil Litigation Categories**

**A.** *Federal Question Cases:*

☐ 1.  Indemnity Contract, Marine Contract, and All Other Contracts)
☐ 2.  FELA
☐ 3.  Jones Act-Personal Injury
☐ 4.  Antitrust
☐ 5.  Wage and Hour Class Action/Collective Action
☐ 6.  Patent
☐ 7.  Copyright/Trademark
☐ 8.  Employment
☐ 9.  Labor-Management Relations
☒ 10. Civil Rights
☐ 11. Habeas Corpus
☐ 12. Securities Cases
☐ 13. Social Security Review Cases
☐ 14. Qui Tam Cases
☐ 15. Cases Seeking Systemic Relief ***see certification below***
☐ 16. All Other Federal Question Cases. *(Please specify)*:_____

**B.** *Diversity Jurisdiction Cases:*

☐ 1.  Insurance Contract and Other Contracts
☐ 2.  Airplane Personal Injury
☐ 3.  Assault, Defamation
☐ 4.  Marine Personal Injury
☐ 5.  Motor Vehicle Personal Injury
☐ 6.  Other Personal Injury *(Please specify)*:_____
☐ 7.  Products Liability
☐ 8.  All Other Diversity Cases: *(Please specify)*_____
_____

I certify that, to the best of my knowledge and belief, that the remedy sought in this case ☐ **does** / ☒ **does not** have implications beyond the parties before the court and ☐ **does** / ☒ **does not** seek to bar or mandate statewide or nationwide enforcement of a state or federal law including a rule, regulation, policy, or order of the executive branch or a state or federal agency, whether by declaratory judgment and/or any form of injunctive relief.

---

**ARBITRATION CERTIFICATION (CHECK ONLY ONE BOX BELOW)**

I certify that, to the best of my knowledge and belief:

☒   Pursuant to Local Civil Rule 53.2(3), this case is not eligible for arbitration either because (1) it seeks relief other than money damages; (2) the money damages sought are in excess of $150,000 exclusive of interest and costs; (3) it is a social security case, includes a prisoner as a party, or alleges a violation of a right secured by the U.S. Constitution, or (4) jurisdiction is based in whole or in part on 28 U.S.C. § 1343.

☐   None of the restrictions in Local Civil Rule 53.2 apply and this case is eligible for arbitration.

NOTE: A trial de novo will be by jury only if there has been compliance with F.R.C.P. 38.

JS 44 (Rev. 04/21)
# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

VERTIL, ABIGAELLE

**(b)** County of Residence of First Listed Plaintiff    Bucks
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Ari R. Karpf, Esq.; Karpf, Karpf & Cerutti, P.C., 8 Interplex Drive, Suite 210, Feasterville-Trevose, PA 19053; 215-639-0801; akarpf@karpf-law.com

## DEFENDANTS

LB CAPITAL, LLC. f/k/a SERVICE PUPS, LLC, ET AL.
County of Residence of First Listed Defendant    Bucks
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [X] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane [ ] 365 Personal Injury - | [ ] 690 Other | [ ] 423 Withdrawal | [ ] 376 Qui Tam (31 USC |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Product Liability | | 28 USC 157 | 3729(a)) |
| [ ] 140 Negotiable Instrument | Liability [ ] 367 Health Care/ | | **INTELLECTUAL** | [ ] 400 State Reapportionment |
| [ ] 150 Recovery of Overpayment | [ ] 320 Assault, Libel & Pharmaceutical | | **PROPERTY RIGHTS** | [ ] 410 Antitrust |
| & Enforcement of Judgment | Slander Personal Injury | | [ ] 820 Copyrights | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 330 Federal Employers' Product Liability | | [ ] 830 Patent | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted | Liability [ ] 368 Asbestos Personal | | [ ] 835 Patent – Abbreviated | [ ] 460 Deportation |
| Student Loans | [ ] 340 Marine Injury Product | | New Drug Application | [ ] 470 Racketeer Influenced and |
| (Excludes Veterans) | [ ] 345 Marine Product Liability | | [ ] 840 Trademark | Corrupt Organizations |
| [ ] 153 Recovery of Overpayment | Liability **PERSONAL PROPERTY** | **LABOR** | [ ] 880 Defend Trade Secrets | [ ] 480 Consumer Credit |
| of Veteran's Benefits | [ ] 350 Motor Vehicle [ ] 370 Other Fraud | [ ] 710 Fair Labor Standards | Act of 2016 | (15 USC 1681 or 1692) |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle [ ] 371 Truth in Lending | Act | | [ ] 485 Telephone Consumer |
| [ ] 190 Other Contract | Product Liability [ ] 380 Other Personal | [ ] 720 Labor/Management | **SOCIAL SECURITY** | Protection Act |
| [ ] 195 Contract Product Liability | [ ] 360 Other Personal Property Damage | Relations | [ ] 861 HIA (1395ff) | [ ] 490 Cable/Sat TV |
| [ ] 196 Franchise | Injury [ ] 385 Property Damage | [ ] 740 Railway Labor Act | [ ] 862 Black Lung (923) | [ ] 850 Securities/Commodities/ |
| | [ ] 362 Personal Injury - Product Liability | [ ] 751 Family and Medical | [ ] 863 DIWC/DIWW (405(g)) | Exchange |
| | Medical Malpractice | Leave Act | [ ] 864 SSID Title XVI | [ ] 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** **PRISONER PETITIONS** | [ ] 790 Other Labor Litigation | [ ] 865 RSI (405(g)) | [ ] 891 Agricultural Acts |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights **Habeas Corpus:** | [ ] 791 Employee Retirement | | [ ] 893 Environmental Matters |
| [ ] 220 Foreclosure | [ ] 441 Voting [ ] 463 Alien Detainee | Income Security Act | **FEDERAL TAX SUITS** | [ ] 895 Freedom of Information |
| [ ] 230 Rent Lease & Ejectment | [X] 442 Employment [ ] 510 Motions to Vacate | | [ ] 870 Taxes (U.S. Plaintiff | Act |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Sentence | | or Defendant) | [ ] 896 Arbitration |
| [ ] 245 Tort Product Liability | Accommodations [ ] 530 General | | [ ] 871 IRS—Third Party | [ ] 899 Administrative Procedure |
| [ ] 290 All Other Real Property | [ ] 445 Amer. w/Disabilities - [ ] 535 Death Penalty | **IMMIGRATION** | 26 USC 7609 | Act/Review or Appeal of |
| | mployment **Other:** | [ ] 462 Naturalization Application | | Agency Decision |
| | [ ] 446 Amer. w/Disabilities - [ ] 540 Mandamus & Other | [ ] 465 Other Immigration | | [ ] 950 Constitutionality of |
| | Other [ ] 550 Civil Rights | Actions | | State Statutes |
| | [ ] 448 Education [ ] 555 Prison Condition | | | |
| | [ ] 560 Civil Detainee - | | | |
| | Conditions of | | | |
| | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Title VII (42USC2000)

Brief description of cause:
Violations of Title VII/PDA, PWFA and the PHRA.

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: [X] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____    DOCKET NUMBER _____

DATE    4/29/2026

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #    AMOUNT    APPLYING IFP    JUDGE    MAG. JUDGE